```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
_____
                                :
PHILIP CARROLL,                 :
                                :      Civil Action No.
               Plaintiff,       :      06-5515 (NLH)
                                :
     v.                         :
                                :
TOWNSHIP OF MOUNT LAUREL,       :      OPINION
                                :
               Defendant.       :
_____ :
```

**APPEARANCES:**
PHILIP CARROLL
129 AIRDALE ROAD
ROSEMONT, PA 19010
*Pro Se Plaintiff/Counter Defendant*

CHRISTOPHER JAMES NORMAN
NORMAN KINGSBERY AND NORMAN
JACKSON COMMONS SUITE A-2
30 JACKSON ROAD
MEDFORD, NJ 08055
*Attorney for Defendant/Counterclaimant Township of Mount Laurel*

**HILLMAN, District Judge**

Pro se plaintiff, Philip Carroll, filed a complaint against defendant Township of Mount Laurel (the "Township") pursuant to 42 U.S.C. § 1983 for violation of his rights under the 5th Amendment's "Takings Clause." Before the Court is plaintiff's motion for summary judgment and several motions to dismiss the defendant's counterclaim. Also before the Court is the Township's motion for summary judgment. For reasons explained below, the Township's motion is granted and plaintiff's complaint is dismissed.

## I. JURISDICTION

Plaintiff has alleged a violation of the 5th Amendment's "Takings Clause" made applicable to the states through the 14th Amendment, and therefore this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

## II. BACKGROUND

Sometime in late 2003 or early 2004, the parties began discussions for the sale of approximately 14 acres owned by plaintiff located along Route 38 and Union Mill Road in the Township of Mount Laurel, New Jersey identified as Block 306, Lots 5 and 5Q (the "property"). The Township was interested in preserving certain "green spaces" in this area and plaintiff had previously sold an adjacent portion of his land to the Township.

After several meetings between plaintiff and counsel for the Township, the parties agreed to split the cost of an appraisal of plaintiff's property. The appraisal report dated April 15, 2004, valued the property at approximately $1.88 million. The appraisal assumed full compliance with all federal, state and local environmental laws.

After several drafts, on September 21, 2004, the parties entered into an agreement of sale (the "agreement") for sale of the property for a sum not greater than $2 million. The agreement contemplated the fact that the plaintiff's "Letter of

Interpretation" ("LOI") from the State of New Jersey, Department of Environmental Protection ("NJDEP") had expired and that sale of the property was "specifically contingent" upon issuance of a current LOI.

The agreement stated in pertinent part:

> The parties hereto acknowledge that Seller has provided to Township copies of a "Wetlands Delineation Plan" dated November 12, 1998 and "Letter of Interpretation" from the State of New Jersey, Department of Environmental Protection, dated January 12, 1999, which is attached hereto and made part of this agreement as Exhibit B. ... The Township agrees hereto that it accepts the Letter of Interpretation.  Nevertheless, the parties hereto acknowledge that the effective period of the Letter of Interpretation expired in January, 2004.  Therefore, the parties hereto agree that the Seller will, after execution of this agreement, arrange for an application for a Letter of Interpretation on this property.  The within transaction is specifically contingent upon the ability of the Seller to provide to the Township such Letter of Interpretation on the entirety of the property showing no greater degree of constraint caused by wetlands on the property than that shown on the "Wetland Delineation Plan" referenced hereinabove as well as the Letter of Interpretation dated January 12, 1999.  There shall not be a change of title between the parties hereto in the absence of the production of such Letter of Interpretation.

Agmt. ¶ 2.07.

Subsequent to this agreement, plaintiff attempted to obtain a current LOI from the NJDEP.  In the Spring of 2005, it became apparent that there were some problems in issuing the LOI due to

concerns of additional wetlands on the property not identified in the 1999 LOI.  In May 2005, plaintiff advised counsel for the Township that he had not been able to obtain an LOI from the NJDEP as required by paragraph 2.07 of the agreement.

On September 19, 2005, the Township passed a "Resolution Creating a Preserved Corridor Along Portions of Union Mill Road" (the "resolution").  The resolution stated that the Township was "...desirous of pursuing the preservation for the corridor along Union Mill Road between Ark Road and Route 38."  The Resolution acknowledged that the Township was under agreement to purchase plaintiff's property but that plaintiff had not and may not be able to meet the requirements of the agreement thereby voiding the agreement.  It was resolved that it would be the policy of the Township to protect Union Mill Road, between Ark Road and Route 38 (the "corridor") from "incursion of commercial or non-residential development."  The resolution stated that the Township would take "immediate steps to notify property owners along the corridor that the Township is communicating with its open space consultant to define the proper amount of property along the northern side of the corridor to adequately protect Union Mill road from commercial uses," and that the Township should communicate with its open space consultant with providing recommendations to the Township Council for action on the issue.

A little over a year after passage of the resolution,

plaintiff filed a complaint against the Township alleging that the resolution amounted to a governmental regulatory taking of his property. Defendants filed a counterclaim to enforce the agreement of sale. Both parties now move for summary judgment and plaintiff also seeks to dismiss defendant's counterclaim.

### III. DISCUSSION

As a preliminary matter, we first address plaintiff's motion to dismiss the Township's counterclaim and his "motion for summary judgment to dismiss counterclaim." Both of those motions will be denied as moot because the magistrate judge granted defendant's motion for leave to file an amended counterclaim. The amended counterclaim supercedes the original counterclaim rending both motions moot. Cf. Snyder v. Pascack Valley Hospital, 303 F.3d 271, 276 (3d Cir. 2002) (stating that "[a]n amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit.").

As described below, we grant the Township's motion for summary judgment and deny the plaintiff's motion for summary judgment on the ground that plaintiff's claim for violation of the "Takings Clause" under the 5th Amendment is not justiciable.[1]

---

[1] Plaintiff objects to the Township's raising a justiciability argument in a motion for summary judgment rather than earlier in the litigation. Challenges to the Court's jurisdiction can be made at any time during the litigation, and can be made by any party or sua sponte by the Court. See Fed.R.Civ.P. 12(h)(3); Grupo Dataflux v. Atlas Global Group, LP, 541 U.S. 567 (2004) (stating that "challenges to subject-matter

Because we grant the Township's motion for summary judgment, we do not reach the merits of the Township's amended counterclaim or plaintiff's motion to dismiss the Township's amended counterclaim.[2]

### A.   Standard for Motion for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the

---

jurisdiction can of course be raised at any time prior to the final judgment.") (citing Capron v. Van Noorden, 2 Cranch 126, 2 L.Ed. 229 (1804)).

[2]   The Township concedes to the dismissal of its counterclaim if plaintiff's 5th Amendment claim is dismissed. The Township's counterclaim is a state law breach of contract claim and this Court need not exercise supplemental jurisdiction over state law claims when the federal claim has been dismissed. See Bonengerger v. Plymouth Twp., 132 F.3d 20, 23 n.1 (3d Cir. 1997)(pursuant to 28 U.S.C. § 1367, a district court can decline to exercise supplemental jurisdiction over state law claims if it has dismissed all of the federal claims).

outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B. Governmental Taking**

Plaintiff argues that the Township's passage of a resolution creating a corridor for "green space" amounted to an impermissible, uncompensated governmental taking of his property. Plaintiff relies on the Supreme Court's decision in Lingle v.

7

Chevron U.S.A., Inc., 544 U.S. 528 (2005) for the proposition that the passage of the resolution amounted to a "total regulatory taking" of his property.

As stated in Lingle, "[t]he Takings Clause of the Fifth Amendment made applicable to the States through the Fourteenth, see Chicago, B&Q.R. Co. v. Chicago, 166 U.S. 226 [] (1987), provides that private property shall not 'be taken for public use, without just compensation.'" Id. at 536. Lingle summarizes[3] the three situations where governmental action may constitute a compensable taking:

(1) Physical invasion of private property. This occurs when the government directly appropriates the property as in a seizure and operation of a coal mine. See U.S. v. Pewee Coal Co., 341 U.S. 114 (1951). Id. at 537. In this instance, "where government requires an owner to suffer a permanent physical invasion of her property - however minor - it must provide just compensation." Id. at 538 (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982));

---

[3] In Lingle, the Supreme Court held that an inquiry into whether the government's regulation of private property "substantially advances" a legitimate state interest "... prescribes an inquiry in the nature of due process, not a takings, test, and...has no proper place in our takings jurisprudence." Id. at 540 (abrogating Agins v. City of Tiburon, 447 U.S. 255, 260 (1980) on that issue). Neither party in this case, however, has argued that the "substantially advances" test applies and this Court does not make this inquiry. Nonetheless, Lingle is helpful in delineating the three categories considered to be governmental takings.

(2) Regulatory taking depriving owner of <u>all</u> economically beneficial use.  <u>Id.</u> at 538 (citing <u>Lucas v. South Carolina Coastal Council</u>, 505 U.S. 1003 (1982)).  This occurs when government regulation is "so onerous that its effect is tantamount to a direct appropriation or ouster."  Under total regulatory takings, the government must pay just compensation, "except to the extent that 'background principles of nuisance and property law' independently restrict the owner's intended use of the property." <u>Id.</u>; and

(3) Regulatory taking based upon factors in <u>Penn Central Transp. Co. v. New York City</u>, 438 U.S. 104 (1978).  <u>Id.</u>  In <u>Penn Central</u>, the Court identified the following factors as having particular significance in evaluating a regulatory taking:

   (a) "The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations" <u>Id.</u> (citing <u>Penn Central</u>, 438 U.S. at 124); and

   (b) "The 'character of the governmental action'" assessing whether the taking was a physical invasion or merely affected property interests through "some public program adjusting the benefits and burdens of economic life to promote the common good." <u>Id.</u>

The first theory - physical invasion - does not apply.  The Township has not physically taken over plaintiff's property and

9

plaintiff retains title to the property.  Rather, plaintiff alleges that the Township's resolution was a "total regulatory taking" and, therefore, appears to proceed under the second theory.[4]  More specifically, plaintiff alleges that the resolution has prohibited all uses, industrial, commercial and residential, of his property.  Plaintiff states that his property was zoned as an industrial district[5] and all residential uses are prohibited in an industrial zone.  He states that after passage of the resolution, all commercial and non-residential uses were prohibited.  Thus, he argues, there are no permitted uses for his property thereby resulting in a regulatory taking by the Township.

---

[4] It is also possible, however, based on some of plaintiff's allegations that he is also proceeding under the third theory applying the Penn Central factors.  Whether plaintiff is proceeding under the second or third theory, however, he must, as we explain below, proffer facts that, if proven, would show the amount of economic loss he allegedly suffered was the result of the Township's passage of the resolution.  His reliance on Lingle to support his theory is somewhat misplaced since in that case, the parties stipulated as to Chevron's economic loss.  Id., 544 U.S. at 534.  Here, there is no such stipulation.  In fact, defendant specifically denies that plaintiff has suffered any loss from the passage of the resolution.

[5] Plaintiff states that in an industrial district, 17 categories of uses are permitted by the Township's Zoning Ordinance.  He also states that a Business Development Overlay Zone for Route 73 and Route 38 existed permitting 27 categories of uses.  Although plaintiff does not state that his property was within the Business Overlay Zone, we do not need to reach the issue of what uses may be have been permitted because plaintiff has not shown that the resolution has the legal effect of restricting the use of the property.

The difficulty with this claim - indeed its fatal flaw at this stage - is the legal effect of the resolution. The resolution does not re-zone the property or instruct others to re-zone it. It merely states an intention by the Township to protect the corridor along Route 38 and Union Mill Road, which includes plaintiff's property, from commercial and non-residential development. The resolution also states that the Township shall communicate with its open space consultant in order to provide recommendations to the Township Council.

Under N.J.S.A. 40:49-1, the term "resolution" is defined as "... any act or regulation of the governing body of any municipality required to be reduced to writing, but which may be finally passed at the meeting at which it is introduced." Id. (as compared with the definition of "ordinance" as "... any act or regulation of the governing body of any municipality required to be reduced to writing and read at more than one meeting thereof and published").

Generally, a resolution is used for a municipal determination that has a "temporary purpose." See In re Ordinance, 931 A.2d 595, 603 n.9 (N.J. 2007)(citing Inganamort, 371 A.2d at 34 (N.J. 1977) (quoting McQuillin, Municipal Corporations, § 14.02 (3d ed. 1973)). A resolution is also used "when it is merely 'an expression of opinion or mind' or of no binding legal effect ... or when it is not 'applicable widely

11

throughout' the municipality." Id. (citing Antieau, Local Government Law § 25.10 (2d ed.)). "A statute requiring that an action be taken by ordinance cannot be accomplished by a mere resolution." See, e.g., Inganamort, 371 A.2d at 39.

The Township argues that the passage of the resolution has no binding legal effect on the zoning for plaintiff's property and that only an ordinance can effect the zoning.[6] Under New Jersey law, it appears that an ordinance may be needed prior to the adoption of any zoning laws. See Harrison Redevelopment Agency v. Harrison Eagle, LLP, 2008 WL 482596, at *8 (N.J.Super.A.D. Feb. 25, 2008)(affirming trial judge's finding that Agency had legal authority to acquire property by eminent domain where Town had passed (1) valid resolution designating the area in need of redevelopment, (2) valid ordinance adopting a redevelopment plan and (3) valid ordinance creating the Agency to implement the redevelopment plan). In sum, the vagaries of a simple resolution expressing a vague intent make clear that plaintiff's claim is not justiciable at this time.

---

[6] The Township also argues that because this case involves a land use dispute, it does not belong in the Federal District Court. The Township states that in order for such disputes to rise to the level of a § 1983 claim, the allegations made by plaintiff must "shock the conscience." The "shocks the conscience" test applies to claims of violations of due process. Plaintiff has not made such claims and the test does not apply to a "takings" analysis. Cf., Lingle, 544 U.S. at 540 (explaining that the "substantially advances" test is an inquiry in the nature of due process, not a takings test).

In <u>Williamson Cty Regional Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 186 (1985), the Supreme Court concluded that the landowner's claim was not ripe because he "had not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures Tennessee provides for obtaining just compensation...." See also <u>County Concrete Corp. v. Town of Roxbury</u>, 442 F.3d 159, 164 (3d Cir. 2006)(stating that the Supreme Court held in <u>Williamson</u> that "... an as-applied Fifth Amendment Just Compensation Takings claim against a municipality's enforcement of a zoning ordinance is not ripe until (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" (the "finality rule"), and (2) the plaintiff has unsuccessfully exhausted the state's procedures for seeking "just compensation," so long as the procedures provided by the state were adequate).

In <u>Williamson</u>, after the developer received preliminary approval from the county for its plans; conveyed an easement to the county for a golf course; began building roads and installing utility lines; spent approximately $3 million building the golf course; and spent $500,000 installing sewer and water facilities, the county changed its zoning ordinance and revised its approval of the plans. <u>Id.</u> at 178. Consequently, the developer submitted

a revised preliminary plan.  <u>Id.</u> at 179.  The county disapproved the revised preliminary plan and the developer appealed to the county board of zoning appeals.  <u>Id.</u> at 180.  The board of appeals determined that the earlier zoning laws should apply, but the county commission declined to follow the appeals board on the ground that the appeals board lack jurisdiction to hear appeals from the commission.  <u>Id.</u>  at 181-82.

The Supreme Court found that whether the developer's claim was viewed as a "taking" in violation of the 5th Amendment or as a violation of the due process clause of the 14th Amendment, the claim was not ripe.  <u>Id.</u> at 182.  The Court stated "... a claim that the application of government regulations effects a taking of property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."  <u>Id.</u> (citations omitted).[7]  Particularly, the Court found that the developer had not yet sought the variances

---

[7] Cases following <u>Williamson</u> have distinguished between claims of violation of the Takings Clause under the Fifth Amendment and 14th Amendment due process claims.  <u>See</u> <u>Salt Creek, L.P. v. City of Warr Acres</u>, No. 01-1500-F, 2002 WL 32026152, at *9 (W.D.Okla. June. 13, 2002)(noting courts should inquire into whether plaintiffs are bringing substantive due process claims in order to circumvent the ripeness requirement in a takings claim). Here, plaintiff has not brought any claims for violation of due process.  Even if he did, such claims would also be challenged as unripe because plaintiff has not alleged facts indicating that he has gone through the appropriate state-level administrative procedures.

that would allow it to develop the property according to its proposed plan, notwithstanding the commission's findings. Id. at 188.

Here, plaintiff's takings claim is not ripe. He has not addressed the NJDEP's concerns regarding the wetlands; he has not obtained an LOI or sought any administrative remedy for not obtaining the LOI; he has not sought to sell his property to another buyer; he has not shown that the property is no longer zoned for the use originally zoned (and if appropriate, that he could not obtain variances); he has not shown that he cannot sell his property, or must sell it at a reduced value <u>because of the issuance of the resolution</u>.[8] The only buyer identified is the Township whose intention in buying the property is the same as its intention in the resolution. Plaintiff has not alleged that the Township has offered less money or refused to purchase the property <u>based upon its resolution</u>.

Accordingly, plaintiff has not proffered facts that if proven could show that the Township has reached a final decision regarding the zoning or land use for plaintiff's property. Thus, there is no "finality" as to the effect of the resolution on the property. Therefore, the Township's motion for summary judgment

---

[8] Although we do not consider it on our ruling, we note defendant's contention that the property is worth less because of the lack of the LOI, a state decision made independently of the passage of the resolution.

15

is granted and plaintiff's motion for summary judgment is denied.[9]

**IV. CONCLUSION**

For the reasons expressed above, defendant's motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied. Plaintiff's motions to dismiss the defendant's counterclaim are denied as moot.

An Order consistent with this Opinion will be entered.

s/Noel L. Hillman<br>
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

---

[9] Plaintiff also argues that the Township is liable under Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658 (1978). Monell held that municipal governments are considered "persons" and are liable under 42 U.S.C. § 1983 for their discriminatory policies or procedures. Id. at 690 (finding policy requiring pregnant employees to take unpaid leaves of absence before those leaves are required for medical reasons to be official policy so that governing body could be sued for alleged violation of the constitution). Monell is not on point because the Township has not argued that it cannot be sued under 42 U.S.C. § 1983 nor does plaintiff dispute the Township's authority to adopt the resolution.

Plaintiff also refers to a decision in DiCristo Realty LLC v. Twp of Mt. Laurel, No. 02-3868 (FLW)(D.N.J.)for the proposition that the same defendant here once erred by placing unreasonable conditions on the use of land. Plaintiff did not provide a copy of the court's unpublished decision in DiCristo nor is one currently available from the court's electronic filing system. Our own review of the docket reveals what plaintiff appears to admit - that the remand in DiCristo occurred after the Township Council had reversed a decision of its zoning board to grant variances. As we have noted, this case did not advance through the administrative process but involves merely a resolution and only a resolution.